CASE 69—ACTION TO RECOVER MONEY PAID FOR DEFENDANT—APRIL 23.

# Muir v. Samuels and Others.

APPEAL FROM NELSON CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND DEFENDANT APPEALS.    REVERSED.

PARTNERSHIP—PURCHASE OF CO-PARTNER'S INTEREST—FRAUDULENT MISREPRESENTATIONS—DEMAND—PAROL ASSIGNMENT FOR CREDITORS—ATTACHMENT OF ASSIGNED PROPERTY BY ASSIGNEE—LIEN OF EMPLOYES—LAUNDRY NOT A MANUFACTURING ESTABLISHMENT.

Held:    1. A partner who has been induced to purchase the interests of his co-partners by their fraudulent misrepresentations as to the indebtedness of the firm, of which he was ignorant, is entitled to relief in equity either by a cancellation of the contract or by requiring the vendors to account for the amount of the debts fraudulently concealed.

2. Where defendant assumed the payment of a certain note as a part of the consideration of a purchase, plaintiffs agreeing to sign a renewal of the note as defendant's sureties if he should not be ready to pay at maturity, defendant, when sued for a breach of his agreement, can not rely upon plaintiffs' breach of their agreement without alleging that he requested them to renew the note after its maturity.

3. As a parol assignment for the benefit of creditors is valid, a creditor who has taken possession of the debtor's property under a parol agreement to sell it and distribute the proceeds among creditors is an assignee for the benefit of creditors, and can not, therefore, have an attachment for his debt levied upon the assigned property, though he may sue to recover a personal judgment for his debt.

4. A laundry is not a "manufacturing establishment," within the meaning of the Kentucky Statutes, section 2487, providing that

the employes of such an establishment shall have a lien upon the property employed in the business when assigned for the benefit of creditors.

JOHN D. WICKLIFFE, FOR APPELLANT.

Appellant and appellees entered into a partnership to erect and operate a laundry at Bardstown, Ky. The laundry was completed and commenced operations about June 1, 1898, with a man named Cannon as superintendent. On August 15, 1898, appellees sold their interest in the laundry to appellant. In consideration of this sale, appellant assumed to pay the debts and liabilities of the firm, which was called the "Nelson Steam Laundry," including the note for $1,400, executed by appellant and Samuels and Edelen to the Peoples' Bank, which became due September 30, 1898. It was further agreed, as part of the conditions of said sale, that appellees should sign and renew said note as sureties for appellant in the event that appellant was not ready to pay it at maturity. The contract was in writing. On December 16, 1898, appellees paid off said note to the bank, and had it assigned to them by writing endorsed thereon. On the next day, December 17, appellees instituted this suit to recover from appellant the amount of said note, and sued out a general attachment on the ground that appellant had not sufficient property subject to execution to pay said note, which was levied on said laundry plant.

To this petition appellant filed general demurrer which was overruled, and he then filed answer. To the first, second and third paragraphs of the answer appellees filed general demurrer and entered a motion to strike from the fourth paragraph all allegations except the denial of the grounds of attachment. This motion and the demurrer was sustained, to which appellant excepted but filed an amended answer, to which appellees filed general demurrer which was sustained.

In the fifth paragraph of the original answer appellant states that the laundry was, and is, indebted to various persons for material and labor furnished it, necessary in its operation, and that these persons had a lien on the property for the several sums due them, and made the answer a cross petition against these persons who answered, setting up their claims and claiming a lien therefor. Thus the pleadings stood until February 16, 1900, when the case was submitted for judgment. On the 23d of February, while the case was still under submission the court permitted appellees to file general demurrer to the answers of the laborers and material men. The court gave judgment as entered in this case, and then permitted appellees to

Muir v. Samuels et als.

introduce oral testimony to attempt to sustain the grounds of their attachment. All this was done after the order of submission was made and entered on the order book, and while the same was in full force. The order of submission was never set aside, and no motion was made to have it set aside.

The court erred in striking out the matter stated in the fourth paragraph of the answer and more fully set up in the fifth paragraph of the amended answer, in which it is averred that it was agreed between appellant and appellees that appellee Samuels should take charge of all the laundry property and sell it to pay the firm debts; that he did take possession thereof under this agreement, for said purpose, and was in possession under this agreement when this suit was brought. It is further averred that under this agreement Samuels held the property in trust for the benefit of the firm creditors; that the property was all personal property and passed under this oral agreement. It is further alleged that while thus in possession, Samuels had the note sued on assigned to appellees and brought this suit to obtain an unfair advantage over other creditors, and that the attachment was obtained by fraud.

The demurrer admits all these allegations to be true. The grounds of the attachment were specifically denied by the answer at the time this cause was submitted February 16, 1900, and no proof had been taken or offered, to sustain the attachment.

### AUTHORITIES CITED.

Burrell on Assignments, 2 ed., 92; 1 Green New Jersey, 264; 4 English (Ark.), 220, 221; 11 Pickering, 362; 22 Ala., 540; 1 Parsons on Contracts, 3 ed., 374 and notes; 93 Ky., 186; 20 Law Rep., 774; 1 Littell, 290; 7 J. J. Marshall, 7; 11 B. Monroe, 74; 90 Ky., 78; 95 Ky., 97; 84 Ky., 23; Civil Code, sec. 552, sub-sec. 2; secs. 263 and 264.

R. C. CHERRY, ATTORNEY FOR GILKEY, SHUCK, &c.

The question claimed here is whether under section 2487, Kentucky Statutes, a steam laundry is a manufacturing establishment. I contend that the language of the statute, "when the property and effects of any railroad, turnpike, canal, or other public improvement company, or any owner or operator of any rolling mill, foundry or other manufacturing establishment" is broad enough to include, and does include, all like establishments operated by steam, where the running or existence of which depends upon its employes. The intent of the Legislature was to the protection of labor and securing to it

its just proceeds and earnings. I am unable to find any decision of this court directly upon the question, but I confidently believe the court below erred in sustaining the demurrer to these labor claims. It has, however, been held in the case of Bogard v. Tylers, Admr., 55 S. W. Rep., 709, that a saw mill is a manufacturing establishment in the meaning of this section and I must say it rather a difficult task to draw even a technical distinction between the two.

JOHN S. KELLY, ATTORNEY FOR APPELLEES.

The cost of this laundry was a little upwards of $2,000; $1,400 of this sum was borrowed from the Peoples' Bank of Bardstown, and a note dated May 30, 1898, was executed therefor signed by Nelson Steam Laundry, by Joseph Muir, treasurer, and by said Muir, L. B. Samuels and Charles Edelen, the last two being the appellees herein. It seems that Muir advanced the balance of the capital to pay for the plant and the laundry firm executed to him its note for same, which he alleges was $658.09. These two notes went to purchase and pay for the plant and were the debts of the partnership and both were signed by the "Nelson Steam Laundry" as well as by the individual members of the firm. The business continued until August 15, 1898, when appellant Muir purchased the interest of the appellees, including all the right, title and interest of appellees in the laundry plant, accounts and bills receivable, and agreed to pay all the debts and liabilities, including the $1,400 note to the Peoples' Bank; and the appellees agreed that in the event he was not ready to pay this note at maturity, they would renew it for him, as sureties. The firm was thereby dissolved. The contract was in writing and signed by all the parties on August 15, 1898. On the next day, August 16, appellant Muir sold and conveyed a one-half interest therein to one John J. Cannon, who was a practical laundry man and they continued to operate it until December, 1898, when by reason of neglect the property became practically worthless. On December 16, the note, being then nearly three months overdue, was paid by the appellees, amounting then to $1,417.80, and they instituted this suit against appellant to recover the sum so paid by them under the terms of the written contract of August 15, 1898, and sued out an attachment against appellant and Cannon upon the ground that they did not have property in the State subject to execution sufficient to satisfy their demand, and that the collection of same would be endangered by delay in obtaining judgment and return of "no property found." The appellant filed answer containing six paragraphs.

Muir v. Samuels et als.

Prior to filing his answer he filed a motion to require appellees to elect which of the two supposed causes of action they would prosecute, and also filed demurrer to the petition. The court overruled both the motion and demurrer. The suit is upon the contract of August 15th, and is for money paid by appellees for the use and benefit of appellant, and his liability, to appellees for the money thus paid by them, arises out of the covenant in this contract to indemnify and save appellees harmless from all liability or responsibility as members of the firm mentioned, and also by reason of his covenant, in said contract, to pay this note to the Peoples' Bank, thereby making it his obligation, for which appellees were simply liable as sureties, as between themselves and appellant. Demurrer was sustained to the first four paragraphs of the answer. Neither the fifth nor sixth paragraphs of the original answer states any matters constituting a defense. The demurrer did not go to these paragraphs, but an issue was made to them by reply, denying each allegation therein. There was no proof taken upon the issues presented, and appellant can not complain that the issues presented were decided against him. The attached property was sold by consent of parties for the sum of $2,000. The fund was brought into the court and subjected to the payment of appellees' judgment against appellant instead of his other debts disclosed by this record. No reason can be shown against the judgment sustaining the atachment and appellant is in no position to complain of the judgment of the court giving to appellees a preference over other creditors of the firm, to the fund arising from the sale of the property attached. Civil Code, secs. 259 and 264; Newton v. West, 3 Met., 27.

OPINION OF THE COURT BY JUDGE BURNAM—REVERSING.

The appellant, Joseph Muir, and the appellees, L. B. Samuels and Charles Edelen, entered into a partnership to erect and operate a steam laundry at Bardstown, Ky., under the style of the "Nelson Steam Laundry." The cost of the laundry was about $2,000. $1,400 of this sum was borrowed from the People's Bank of Bardstown, Ky., and a note dated May 30th of 1898, due on the 30th of September thereafter, was executed to the bank, signed by the Nelson Steam Laundry, by Joseph Muir, treasurer, and by each of the partners. The balance of the capital nec-

essary to pay for the plant was advanced to the firm by appellant, and a note executed to him, which was signed in the same way. On the 15th day of August thereafter appellees sold their interest in the laundry plant to appellant, and assigned and transferred to him all their right, title, and interest in the accounts and bills receivable due the firm. In consideration of this sale, appellant assumed to pay the debts and liabilities of the laundry firm, including the note for $1,400 due to the Peo. ple's Bank. It was further stipulated and agreed as part of the condition of the sale that appellees should sign a renewal of the $1,400 note as sureties for appellant in the event he was not ready to pay same at the maturity thereof. The firm was, by reason of the contract and agreement, dissolved. On the succeeding day, August 16th, the appellant, Muir, sold and conveyed one-half interest in the property to John J. Cannon, a practical laundryman, and they continued to operate the plant until December, 1898. On the 16th of December, appellees paid off the $1,400 note to the bank, and had it assigned to them by a written indorsement on the back thereof, and on the following day instituted this suit in equity against appellant to recover the amount so paid by them in accordance with the terms of the contract of dissolution, and at the same time sued out an attachment against appellant and Cannon upon the ground that they did not have property in the State subject to execution sufficient to satisfy their demand, and that the collection of same would be endangered by delay in obtaining judgment and return of no property found. To this petition Muir filed an an. swer containing six paragraphs setting up various grounds of defenses. A demurrer was sustained to the first, second, and third paragraphs, and to all of the fourth and

Muir v. Samuels et als.

fifth except so much as controverted the grounds of the attachment; and judgment was given plaintiffs for the amount of the $1,400 note, and their attachment sustained. Certain laborers employed by the laundry company also filed an answer setting up the amounts due them for labor, and pleaded that under section 2487 of the Kentucky Statutes they were prior liens.

We will first consider the propriety of the court's ruling upon the demurrer of appellee to the various paragraphs of appellant's answer. In the first paragraph it is substantially alleged that the plaintiffs knew the amount of indebtedness of the firm, and that appellant did not; and that they falsely represented to him that the laundry company only owed $150 in addition to the $1,400 note executed to the bank, while as a matter of fact this outside indebtedness amounted to $840; and that this fraudulent representation was made to induce appellant to buy the interest of appellees. It will be admitted that, as a general rule, the law requires prudence and vigilance on the part of persons in their business transactions, and will not relieve one who blindly closes his eyes to the facts. And where the means of knowledge are equally available to both parties to a transaction, and one of them does not avail himself of these means and opportunities, he will not be heard to say that he has been deceived by the other's misrepresentations. But this rule is not universal, and does not apply where the parties occupy a relation of trust or confidence,—as, where a trustee makes a false representation to his *cestui que trust* or an agent makes such representation to his principal, and thereby obtains an advantage, or an attorney to his client; nor does the general rule apply where the parties occupy the relation of partners. See Pomeroy v. Benton, 57 Mo., 531,

and Davenport v. Buchanan, 6 S. D., 376 (61 N. W., 47). The law imposes upon partners the duty of fair and open dealing with each other, and each has a right to rely explicitly upon the statements of the other concerning matters pertaining to their business relations. Each member of a partnership is authorized to incur debts and make contracts within the scope of the partnership, which would be binding upon them all. In this way one partner might have knowledge of a liability due by the firm which would not be known to all the members thereof; and if, as alleged in the first paragraph of appellant's answer, appellees actually knew of the existence of more than $600 of outstanding indebtedness against the firm which was fraudulently concealed from appellant for the purpose of inducing him to buy their interest, they would be guilty of a fraud upon him which a court of equity will relieve either by the cancellation of the contract of dissolution or by requiring them to account for the amount of debts so fraudulently concealed. We think the court erred in sustaining the demurrer to the first paragraph of the answer

The second paragraph is not good for the reason that appellant does not allege that he ever requested appellees to renew the $1,400 note after the maturity thereof, and the demurrer to this paragraph was properly sustained.

The defense relied on in the third and fourth paragraphs of the original and amended answer is based upon the idea that this is a suit upon the $1,400 note, and that when it was paid by plaintiffs it was extinguished. We do not so understand the pleadings. On the contrary, we think it was plainly the purpose of the pleader to sue upon the contract of sale, and to allege that the failure of appellant to pay the $1,400 note was a breach of the contract

of sale. The demurrer to both the third and fourth para·graphs was properly sustained.

In the fifth paragraph it is alleged that all the property of the laundry company was personalty, and that shortly before the institution of this suit and the suing out of the attachment it was agreed by appellant, at the instance of appellees, that Samuels should take possession of all the property of the laundry company, and sell same, and appropriate the proceeds thereof to the payment of the debts of the concern in accordance with the rights of their respective creditors; and that he did take charge of the property under this agreement; and that at the time of the institution of this suit he was in full possession thereof for this purpose, and held the property of the laundry company in trust for the benefit of all their creditors; that appellant was deterred from making a general assignment for the benefit of all of his creditors by the persuasions and representations of appellees that this was not necessary and the same results could be accomplished without it. To constitute a valid assignment of personal property, no particular form of words or instrument is required. Any language or act which makes an appropriation of this character of property amounts to an equitable assignment. For instance, in Gram. v. Cadwell, 5 Cow., 489, it was held that an agreement between partners on dissolution that one should have the settlement of their affairs, he continuing the business and assuming all debts and accounts outstanding and due with which the firm had any connection, until they should be settled; and that all moneys contributed by the outgoing partner except those which had been drawn out by him should be paid back by the other within a limited time,—operated as an assignment to the remaining partner of the debts due the firm.

In the case of Brown v. Chamberlain, 9 Fla., 464, where a debtor, without any writing whatever, but verbally, and by word of mouth only, assigned and transferred and delivered to three of his creditors, composing a firm, a package containing notes, drafts, etc., for nearly $30,000 in trust to collect and distribute the proceeds so far as they would go *pro rata* between assignees and his other creditors, was held to be a good, voluntary assignment. In Newby v. Hill, 59 Ky., 530, it was held that a parol appropriation of a fund in payment of debts to the assignee was valid. A verbal assignment and transfer of personal property to another in trust for the benefit of all his creditors is good when the assignee actually takes possession thereof under the agreement. There was nothing in the agreement as alleged which prevented the appellees from seeking a personal judgment on their debt, but, having accepted and taken possession of the laundry property under the agreement to sell it, and appropriate the proceeds to the payment of all the creditors of the firm, they could not, in violation of this agreement, seize by attachment and appropriate this entire trust property to the payment of their debt; and, taking as true this averment of the answer in so far as the attachment was levied upon the property of the laundry, which had been actually turned over to the appellees the attachment should be discharged, and the proceeds of the property applied to the creditors of the laundry company in accordance with the terms of the transfer to Samuels.

Another question is raised by Fee Gilkey and others, laborers employed by the laundry company. It is contended for them that under section 2487 of the Kentucky Statutes the laundry was a manufacturing establishment, and that they are entitled to a prior lien, by virtue of the

Muir. v. Samuels et als.

statute, upon the money and property arising from the sale of the laundry. The section referred to is as follows: "When the property or effects of any mine, railroad, turnpike, canal, or other public improvement company, or any owner or operator of any rolling mill, foundry or other manufacturing establishment, shall come into the hands of any executor, administrator, commissioner, receiver of a court, trustee or assignee for the benefit of creditors, or shall in any wise come to be distributed among creditors, whether by operation of law or by the act of such company, owner or operator, the employes of such company, owner or operator in such business, and the persons who shall have furnished materials or supplies for the carrying on of such business, shall have a lien upon so much of such property and effects as may have been involved in such business, and all the accessories connected therewith, including the interest of such company, owner or operator in real estate used in carrying on such business." The validity of this claim depends upon the question as to whether the laundry is a manufacturing establishment under the statute. The only business of a laundry is to transform soiled into clean linen. It is true that this is done largely by means of machinery, and requires the use of an engine and boilers, and other appliances ordinarily used in manufacturing establishments; but, after all, nothing new is produced. In Hittinger v. Inhabitants of Westford, 135 Mass., 258, it was held that cutting ice on a pond and storing it in a building is not a manufacturing establishment, and so it has been held that an ice-cream confectioner is not a manufacturer, within the meaning of a law exempting manufacturing establishents from taxation. See City of New Orleans v. Mannessier, 32 La. Ann., 1075. We are therefore inclined

to the opinion that a laundry can not be considered a manufacturing establishment in contemplation of the statute, *supra*. For the reasons indicated, the judgment appealed from is reversed, and the cause remanded for proceedings consistent with this opinion.