STATE *ex. rel.* WM. L. MOOSE, ATTORNEY GENERAL, *v.* FRANK.

Opinion delivered July 13, 1914.

1. MONOPOLIES—UNLAWFUL COMBINATIONS.—An agreement fixing the price for laundering, is not unlawful under section 1, Acts of 1905, p. 1, prohibiting combinations to fix the price of any commodity, convenience or repair.

2.   MONOPOLIES—UNLAWFUL COMBINATIONS.—An agreement fixing the
price of laundering is not included within the terms "any article
or thing whatsoever," as used in section 1, Act 1905, p. 1.

3.   STATUTES—PENAL STATUTES—CONSTRUCTION.—Act of 1905, p. 1, § 1,
known as the anti-trust act, is highly penal in its nature, and
therefore will be strictly construed.

Appeal from Pulaski Circuit Court, Third Division;
*G. W. Hendricks,* Judge; affirmed.

STATEMENT BY THE COURT.

The complaint in this cause alleged that appellees
were engaged in the laundering business in the city of
Little Rock, some of the appellees being corporations,
others being a copartnership and still others the indi-
vidual business of the proprietors of the defendant laun-
dries mentioned in the complaint.   It was alleged in the
complaint that appellees, in violation of the anti-trust
law, have agreed with each other to fix prices to be
charged their customers and that they carried on their
business under said agreement, the effect of the agree-
ment being to stifle competition and increase the prices
of laundering.   The second paragraph of the complaint
alleged that the appellees, for the purpose of driving out
competition in the city of Malvern, in this State, had
unlawfully combined with each other to do laundering
for the people of that city at prices less than those
charged the people of Little Rock and other places.   A
large sum of money was demanded in each paragraph
of the complaint as a penalty, against appellees, because
of their alleged unlawful combination.

Separate demurrers were filed for appellees, and
among other grounds of demurrer the act of the General
Assembly of this State, under which the proceeding was
brought, was attacked as unconstitutional; and in all the
demurrers it was alleged that the complaint did not state
facts sufficient to constitute a cause of action.   The cir-
cuit court held that the complaint did not state a cause
of action and sustained the demurrer and the State has
prosecuted this appeal from that judgment of the court.

The suit was instituted under the authority of section 1 of the anti-trust act passed at the 1905 session of the General Assembly of this State (Acts 1905, page 1), as amended by Act No. 161 of the Acts of 1913. Section 1 of the act of 1905 reads as follows:

"Any corporation organized under the laws of this or any other State, or country, and transacting or conducting any kind of business in this State, or any partnership or individual, or other association or persons whatsoever, who are now, or who shall hereafter, create, enter into, become a member of, or a party to, any pool, trust, agreement, combination, confederation or understanding, whether the same is made in this State or elsewhere, with any other corporation, partnership, individual, or any other person or association of persons, to regulate or fix either in this State or elsewhere the price of any article of manufacture, mechanism, merchandise, commodity, convenience, repair, any product of mining, or any article or thing whatsoever, or the price or premium to be paid for insuring property against loss or damage by fire, lighting or tornado, or to maintain said price when so regulated or fixed, or who are now, or shall hereafter enter into, become a member of, or a party to any pool, agreement, contract, combination, association or confederation, whether made in this State or elsewhere, to fix or limit in this State or elsewhere, the amount or quantity of any article of manufacture, mechanism, merchandise, commodity, convenience, repair, any product of mining, or any article or thing whatsoever, or the price or premium to be paid for insuring property against loss or damage by fire, lightning, storm, cyclone, tornado, or any other kind of policy issued by any corporation, partnership, individual or association of persons aforesaid, shall be deemed and adjudged guilty of a conspiracy to defraud and be subject to the penalties as provided by this act."

*Wm. L. Moose,* Attorney General, *Bradshaw, Rhoton & Helm* and *E. L. McHaney,* for appellant.

1. The act is constitutional. 76 Ark. 303; 81 *Id.* 519; 212 U. S. 322, L. Ed. 530.

2. Our contention is that the agreement violates the anti-trust act by fixing the price of a "commodity," or an article of *"convenience"* or *"repair."* As to the doctrine of *ejusdem generis,* see 95 Ark. 114. Words are given their obvious and natural meaning. 67 Ark. 566; 71 *Id.* 561. Words judicially interpreted are presumed to have been used by the Legislature in that sense. 84 Ark. 316; 123 Mass. 493; 12 *Id.* 252; 73 U. S. (16 Wall.) 632; 18 L. Ed. 904. A privilege is a commodity. 87 Mass. 428; 134 Mass. 419; 102 Ia. 602; 70 N. W. 107.

*Morris M. & Louis M. Cohn,* for appellees.

1. A combination to regulate the price of laundering does not come within the terms of the act. 95 Ark. 114; 159 Mo. 410; 81 Am. St. 368; 60 S. W. 91; 51 L. R. A. 151; 215 Mo. 421; 114 S. W. 997; 22 L. R. A. (N. S.) 607; 23 *Id.* 1284; 56 Neb. 386; 76 N. W. 900; 23 L. R. A. (N. S.) 1260; 45 *Id.* 355; 117 Fed. 570; 52 Atl. 326; 62 S. W. 481; 59 S. W. 916.

2. The act is unconstitutional. 58 Ark. 421; 29 L. R. A. 79; 22 *Id.* 340; 210 Fed. 173; 165 U. S. 578; 14 L. R. A. (N. S.) 361; 231 Ill. 340.

3. Laundering is not a "commodity." Cases, *supra.* 95 Ark. 114; 118 N. W. 276; 23 L. R. A. (N. S.) 1284; 86 Tex. 250; 22 L. R. A. 483; 24 S. W. 398; 231 U. S. 495-503; 52 Atl. 326.

SMITH, J., (after stating the facts). It is conceded by the State that an agreement to fix the price of laundering is not an agreement to fix the price of "any article of manufacture, mechanism or merchandise;" but it is contended that the facts here alleged constitute an agreement to fix the price of a commodity, convenience or repair. And it is not contended by the State that the business of laundering is included in the terms "any article or thing whatsoever." This last contention could not be sustained, because if the business of laundering is not a commodity, convenience or repair, then it would

not be embraced in the words "article or thing whatso-
ever." Such a construction would be precluded by the
decision of this court in the case of *State* v. *Chicago, R.
I. & P. Ry. Co.,* 95 Ark. 114. That case was a proceed-
ing against that railroad for a violation of the anti-trust
act of 1905 for entering into a pool, trust, agreement,
combination, confederation, and understanding with cer-
tain domestic corporations, all owning and operating cer-
tain lines of railroads within the State, for the purpose
of fixing rates to be charged for the service of carrying
freight and passengers. In the opinion in that case, it
was said: "Counsel for the State do not contend that
freight or passenger rates are articles of merchandise,
manufacture, mechanism, commodity, convenience or re-
pair, or that they are products of mining; but they do
contend that the words "or any article or thing whatso-
ever" include passenger and freight rates. We can not
agree with their contention. This is a plain case for the
application of the doctrine of *ejusdem generis.*

"The rule is 'when general words follow an enumer-
ation of particular things, such words must be held to in-
clude only such things or objects as are of the same kind
as those specifically enumerated.' 2 Lewis Sutherland
on Statutory Construction (2 ed.), § 422."

(1-2) And it was there further said: "Our 'anti-
trust act' does not in express terms attempt to deal with
the questions of transportation by railroads or other car-
riers, or the fixing of rates therefor. It would be a violent
presumption, indeed, to say that the Legislature in this
vague and indefinite manner attempted to deal with a
subject which so vitally affects the welfare of the people,
and a proper solution of which has ever been one of the
greatest concern and complexity. It seems evident to
us that the framers of the act intended that the words
'or any article or thing whatsoever' should take their
meaning from the things specifically mentioned before,
and that, when so construed, the allegations of the com-
plaint do not constitute a violation of the terms of
the act."

(3)   In construing this act, we must bear in mind that it is highly penal, and as such must receive a strict construction.  *Hughes* v. *State,* 6 Ark. 132; *Grace* v. *State,* 40 Ark. 97; *Stout* v. *State,* 43 Ark. 413.

Discussing the original anti-trust act of the General Assembly of 1899, Mr. Justice RIDDICK, in *State* v. *Lancashire Fire Insurance Co.,* 66 Ark. 466, said:  "Whatever the Legislature may have intended, such intention can have no effect unless expressed in the statute; for this, being a penal statute, can not be extended by implication.   It would be in the highest degree unjust to punish conduct not clearly forbidden by the law itself."

Nor are we concerned with any consideration of the economic questions involved in this act.   A study of its terms makes the fact plain that the Legislature has not included within the inhibition of this act agreements relating to the price of labor.

The question has several times been before the courts of various States as to whether a laundry was a manufacturing establishment or not, and so far as we are advised it has been uniformly held that it is not.   In the case of *Downing* v. *Lewis et al.,* 76 N. W. 900, 56 Neb. 386, it was contended the sale of a laundry and an agreement entered into between the parties with reference thereto violated the anti-trust law of that State which prohibited any combinations or agreements where persons are engaged in the manufacture or sale of any article of commerce or consumption, or for any persons so engaged to enter into any combination or agreement relating to the price of any article or product of such manufacture, and the court there decided that a laundry was not a manufacturing establishment, and in so deciding that question it was there said:  "It seems perfectly plain that a laundry, the business of which is to wash and iron linen, and other articles of wearing apparel and domestic use, which have become soiled in the service for which they were fabricated, is not a manufacturing establishment, within the meaning of the section quoted.   In the

common understanding, the function of a laundry is to make clothes clean, rather than to make clean clothes.'.'

In *Commonwealth* v. *Keystone Laundry Co.*, 52 Atl. 326, where a law of the State of Pennsylvania which exempted from taxation so much of the capital stock of a manufacturing corporation as was invested in the carrying on of manufacturing was under construction, a laundry company claimed the exemption of that act. It was held that the laundry company was not a manufacturing company, even though it manufactured soaps and dyes as incidental to its business; the court there used the following language: "Its principal business, as properly stated by the court below, is washing and ironing, and in carrying on the business it needs soaps and dyes, and even if it does manufacture these two articles for its own use, instead of buying them, such manufacture does not make the 'washing and ironing' concern a manufacturing plant and business as defined by statute, lexicon or judicial utterance."

Other cases to the same effect are *Muir* v. *Samuels*, 62 S. W. 481; In re *White Star Laundry Co.*, 117 Fed. 570.

In the case of *State ex rel. Star Publishing Co.* v. *The Associated Press*, 159 Mo. 410, 60 S. W. 91, which was a suit by mandamus to compel respondent, a press association, whose business it was to gather news to furnish relator with its service, relator, among other things, claimed that respondent was a member of a combination and monopoly consisting of an association of newspapers organized to fix the price for news service and so coming within the scope of the anti-trust law. The writ was denied, and it was there said: "The business is merely one of personal service; an occupation. Unless there is a 'property' to be 'affected with a public interest,' there is no basis laid for the fact or charge of a monopoly. (Citing authorities.) * * * There is one remaining point to be considered, and that relates to the anti-trust laws. * * * The law on the subject in this State prohibits 'any pool, trust, agreement, combination,' etc., 'to regulate or fix the price of any article of manufacture,

mechanism, merchandise, commodity, convenience, repair; any product of mining, or any article or thing whatsoever; or the price or premium to be paid for the insurance of property,' or to fix or limit the production of the things whose price may not be regulated or fixed. Nothing is discoverable in this section which is at all applicable to the business in which respondent is engaged. Whether we apply to the words of the statute the, rule of *noscitur a sociis,* or that of *ejusdem generis,* the result must be the same, and there is a special reason why the ruling in this regard should be a strict one, and this is because the statute is highly penal."

The case of *Rohlf* v. *Kasemeier,* 118 N. W. 276, was a prosecution against a number of physicians for entering into an agreement to fix and maintain fees to be charged for their services. The section of the statute of that State under which the indictment was returned reads as follows: "Any corporation organized under the laws of this or any other State or county for transacting or conducting any kind of business in this State, or any partnership, association or individual, creating, entering into or becoming a member of, or party to, any pool, trust, agreement, contract, combination, confederation or understanding with any other corporation, partnership, association or individual, to regulate or fix the price of any article of merchandise or commodity or to fix or limit the amount or quantity of any article, commodity or merchandise to be manufactured, mined, produced or sold in this State, shall be guilty of a conspiracy."

In its opinion the Supreme Court of that State said: "The first point to be decided is, do the acts charged constitute a crime under this section of the Code? It will be noticed that it forbids a combination, agreement or understanding to regulate or fix the price of any article of merchandise or commodity, or of merchandise to be manufactured, mined, produced or sold in this State. The primary inquiry is, Are the charges of a physician or surgeon for his medical skill or ability an article of merchandise or commodity to be produced or sold in this

State? For appellant it is contended that the word 'commodity' is broad enough to cover the charge made for professional services or skill, and that the trial court was in error in holding to the contrary.

"It must be remembered that the word is found in a criminal statute, and that in the interpretation of such statutes different rules apply from those which obtain in civil matters, or where contracts are involved. Nothing is to be added to such statutes by intendment, and, as a rule, they are to have a strict construction. * * * As already indicated, the word must be taken in connection with the others used in the statute, and it is manifest that the commodity referred to must have been such as could be manufactured, mined, produced or sold in the State, and the price was to be of an article of merchandise or commodity. If the contention of appellant be correct, the statute covers all kinds of personal labor, both skilled and unskilled, under the term 'commodity.' * * *

"The statute before us has nothing to do with commerce; nor does it have to do with restraint of trade, or commerce, as does the Sherman act. It has to do with pools and trusts organized in this State to fix or regulate the price of any particular commodity or to fix or limit the amount or quality of any article, commodity or merchandise to be produced or sold in the State. Surely, it has no reference to the amount or quality of labor to be produced or sold. Such a construction would be ridiculous. And, if it will not bear that interpretation, it follows that the word 'commodity,' when used with reference to prices, should not be held to include labor. No case has been cited which supports appellant's contention, and we have not been able to find any."

The Supreme Court of Texas, in the case of *Queen Insurance Co.* v. *State*, 86 Tex. 265, 24 S. W. 397, defined the word "commodity" as used in the anti-trust law of that State as follows: "The word 'commodity' has two significations. In its most comprehensive sense it means convenience, accommodation, benefit, advantage, inter-

est, commodiousness; but according to Webster's International Dictionary, the use of the word in this sense is obsolete. Page 286. The word is ordinarily used in the commercial sense of any movable or tangible thing that is ordinarily produced or used as the subject of barter or sale; and we think this was the meaning intended to be given to it by the Legislature in the statute in question.''

If the business of laundering is not a commodity, then an agreement fixing prices for the performance of that service is not within the inhibition of the anti-trust act. No other word or term in that act could include that business. The act does use the word ''repair,'' but it can not be seriously contended that this word is sufficient to embrace the business of laundering. It may be true, that to some extent laundries do repair the clothes which they wash; but it does this as a mere incident to that business; and by such service they merely ''repair'' the damage which they have done in performing their service of making the clothes clean. The business of laundering is a mere service done, whether performed by hand or by machinery, and an agreement to regulate the price to be charged therefor is in its last analysis merely an agreement to fix the price of labor, or services, and the Legislature of this State has not made such an agreement unlawful. *Lohse Patent Door Co.* v. *Fuewlle*, 215 Mo. 421, 114 S. W. 997; *Cleland* v. *Anderson*, 66 Neb. 252, 92 N. W. 306; *State* v. *Duluth Board of Trade*, 23 L. R. A. (N. S.) 1260.

The judgment of the court below sustaining the demurrer is, therefore, affirmed.