PELLERIN LAUNDRY MACH. SALES CO. *v.* CHENEY, COMMR.

5-3053                                    371 S. W. 2d 524

Opinion delivered October 21, 1963.

*Rose, Meek, House, Barron, Nash & Williamson,* for appellant.

*Lyle Williams* and *Henry Ginger,* for appellee.

CARLETON HARRIS, Chief Justice. The question in this litigation is whether laundry and dry cleaning machinery and equipment are manufacturing or processing equipment and machinery within the meaning of the Arkansas Compensating (Use) Tax Act as set out in Ark. Stat. Ann. § 84-3106(d) (Repl. 1960)[1] as amended by Act 140 of 1961 [Ark. Stat. Ann. § 84-3106 (d) (Suppl. 1961)].

Appellant, Pellerin Laundry Machinery Sales Company, Inc., of Louisiana, contends that the heavy machinery it sold to Arkansas customers prior to April 1, 1961, is exempt under the following language from Subsection (d) of Section 84-3106:

"There are hereby specifically exempted from the taxes levied in this act: * * * Tangible personal

---

[1] Act 487 of 1949.

property used by manufacturers or processors or distributors, including ginners of cotton, and including the artificial drying of rice, for further processing, compounding or manufacturing; * * *''

The contention is then made that sales subsequent to April 1, 1961, are exempt from the tax under the following exemptions set out in Act 140 of 1961:

''(D) MANUFACTURERS AND PROCESSORS. Tangible personal property in the form of raw materials or component parts for further processing, manufacturing, or assembling when such goods, wares and merchandise goes into and becomes a recognizable, integral or component part of a manufactured or processed part of a manufactured or processed article or end-product for sale either within or without the State of Arkansas.

''Manufacturing or processing machinery, replacement parts, materials, and supplies used directly in the manufacturing or processing operation provided; such materials, machinery, supplies, and equipment are not available within this State by reason of not being manufactured or produced within Arkansas; or are not available from instate sellers' or suppliers' stocks in trade within this State. It is the intent of this subsection to exempt only such equipment, machinery, materials, or supplies that constitute the primary facility engaged in the direct production, processing or manufacturing of articles of commerce at industrial and processing plants in Arkansas and which are not available from the seller's regularly maintained stock in this State.

''The terms 'manufacturing' and 'processing' as used herein, refer to and include those operations commonly understood within their ordinary meaning and shall include mining, quarrying, refining, and the production of natural resources, cotton ginning, and rice drying.''

Willis Pellerin of New Orleans, President of the aforementioned company, which has its principal place of business in New Orleans, testified that his company had been in the business of selling laundry machinery

since around the first of May, 1956.[2] An exhibit was offered depicting the washing machines, which are not suitable for home use, but are designed for commercial type laundry operations. The machines weigh from 567 to 1,450 pounds. Mr. Pellerin described the advantages of the machines and stated that they were suitable for chemical procedures that would produce sterile washing. He described bacteriological tests made and stated that "washing is more than simply rubbing clothes together. It is a processing procedure that has the objective of going beyond cleaning clothes only." Pictures of other machines were exhibited[3] which the witness stated could be used for several purposes in addition to the laundry business. Though he mentioned some other uses for the various machines, all are primarily used in laundry establishments, and appellant in this argument (that the equipment is exempt from the payment of the tax) makes no effort to distinguish, or separate, those machines used solely for laundry purposes, and those occasionally sold for other use.[4] The contention that these machines are "processing" machinery is set forth in Mr. Pellerin's testimony as follows:

"The process is actually one of taking a clean material-soiled material or shirt and making it clean through the process of washing, drying and ironing. The ironing is in fact a re-shaping of the garment to return it to the original condition that it was when it was completed by the manufacturer. * * *

"The principle of ironing is nothing more than shaping, a reshaping. Remember when you wash material you

---

[2] Pellerin, Inc., manufactures nothing, but purchases such equipment for resale to industrial type plants. Pellerin Milnor Corporation manufactures industrial type washing machines and is one of the suppliers of Pellerin Laundry. This type of machinery is not manufactured or sold in Arkansas.

[3] Among others, extraction machines, and ironers, the latter weighing as much as 32,000 pounds, and selling for $26,000 to $30,000.

[4] For instance, the witness mentioned that fifteen pressing machines are being used at the Jack Winters Manufacturing Co. in Marianna and ten at the garment plant in Lepanto. Also, Pellerin stated that extraction machines can be used by potato chip manufacturers for the purpose of removing "surplus water prior to frying after the potatoes have been cut." Further, according to the witness, extractors have been sold to the sugar industry for the purpose of refining sugar. No Arkansas sales for the last two purposes were mentioned.

lose even the fibers, and the fibers go in all directions reflecting light in every direction. You get a very rough looking appearance. When you put the damp garment on a pressing machine, the first thing that occurs is stringing and in the process of restringing that garment, the fibers are all laid in one direction giving light reflection that gives you the flat finish that you like on your collars and cuffs for example. * * *''

Pellerin stated, ''You get a much better, closer, tighter finish with a garment that has been processed commercially, a more acceptable, a more desirable product.'' He testified that the principal customers of his company were ''laundries, followed by the dry cleaners, followed by motels and hotels, institutions, and linen supply and diaper plants, etc.''

After the Commissioner of Revenues, following a hearing, held that the Pellerin Company was not entitled to the exemption claimed,[5] appellant instituted suit in the Chancery Court, contending that all equipment it sold to Arkansas consumers was manufacturing or processing machinery and equipment, and that such machinery was exempt from the tax here in question. From an adverse decree by that court, appellant brings this appeal.

Appellant's argument seems to be that the process of laundering a dirty shirt is actually a re-manufacturing process. In its brief, the company argues that it is not logical for the commissioner to exempt from the tax, equipment which is purchased for use in a shirt manufacturing plant, but refuse such exemption for machinery which is purchased by a laundry ''to re-manufacture a soiled and wrinkled shirt into its former clean and wearable shape.''

Appellant states that ''the laundry and dry cleaning plant transforms one form of garment, not ordinarily usable by the ordinary customer, into a clean, correctly shaped garment which can be worn and used by the ordi-

---

[5] On January 23, 1962, an agreement was entered into to the effect that all assessments, as well as compensating (use) taxes on future sales would be paid under protest, and all of said sums would be refunded if Pellerin's claim of an exemption should be sustained by the court.

nary customer." Since the soiled or dirty garment is given "new form," appellant contends that the reshaped appearance is the result of a manufacturing operation. We completely disagree. In the first place, in determining whether a particular operation constitutes manufacturing or processing within the terms of an exemption statute, the courts of various jurisdictions have tended to follow the popular meaning of the words in question, and we also follow this rule. See *Morley* v. *E. E. Barber Construction Company,* 220 Ark. 485, 248 S. W. 2d 689 (1952).[6] Neither do the three other Arkansas cases on the subject afford appellant's argument any support.[7] Certainly, the popular conception of manufacturing or processing does not come to mind when a shirt is laundered or a suit is cleaned. Rather, we view the manufacturer as one who produces or fabricates the shirt, or suit of clothes, such as the makers of Arrow shirts, or the Hart, Schaffner and Marx Company. These companies, and other clothing manufacturing concerns, sell a *product;* the laundry and dry cleaning establishment sells a *service.*

Appellant emphasizes the word, "processing," but in interpreting the pertinent statutes, we do not consider "manufacturing" and "processing" as two distinct operations. It will be noted in reading a portion of the statute that the terms are defined together, and reference is made to the ordinary meaning of the words. From the statute:

"The terms 'manufacturing' and 'processing' as used herein, refer to and include those operations com-

---

[6] In the same case, we held that a tax exemption must be strictly construed "and to doubt is to deny exemption."

[7] These cases are *Morley* v. *Brown & Root, Inc.,* 219 Ark. 82, 239 S. W. 2d 1012 (1951) (relating to certain equipment which was purchased for the construction of Bull Shoals Dam, such as locomotives, tracks, conveyors, cranes, bull dozers, etc.) ; *Teague* v. *Scurlock,* 223 Ark. 271, 265 S. W. 2d 528 (1954), (wherein the court declined to hold that commercial poultry feed was used by growers in processing or manufacturing broilers) ; *Scurlock* v. *Henderson,* 223 Ark. 727, 268 S. W. 2d 619 (1954), (wherein it was argued that ginning machinery was used in the processing or manufacturing of cotton). The court held that cotton becomes a commercial commodity when it is ginned and is not ready for processing or manufacturing until after the ginning process.

monly understood within their ordinary meaning and shall include mining, quarrying, refining, and the production of natural resources, cotton ginning, and rice drying.''

As stated in *Scurlock, Comm. of Rev.* v. *Henderson,* 223 Ark. 727, 268 S. W. 2d 619,

'' 'Considering the meaning of the word ''manufacturing'' in connection with our consideration of the meaning of ''processing,'' it must be plain that the word ''processing'' has reference only to some stage or process of manufacturing.   *   *   *' ''

In fact, this court held as far back as 1914, in *State ex rel.* v. *Frank,* 114 Ark. 47, 169 S. W. 333, that a laundry was not a manufacturing establishment. While the question in that litigation did not relate to tax exemptions, the court did have occasion to state whether a laundry was a manufacturing concern. In an opinion by the late beloved Justice Frank Smith, it was said:

''The question has several times been before the courts of various States as to whether a laundry was a manufacturing establishment or not, and so far as we are advised it has been uniformly held that it is not. In the case of *Downing* v. *Lewis, et al.,* 76 N. W. 900, 56 Neb. 386, it was contended the sale of a laundry and an agreement entered into between the parties with reference thereto violated the anti-trust law of that State which prohibited any combinations or agreements where persons are engaged in the manufacture or sale of any article of commerce or consumption, or for any persons so engaged to enter into any combination or agreement relating to the price of any article or product of such manufacture, and the court there decided that a laundry was not a manufacturing establishment, and in so deciding that question it was there said: 'It seems perfectly plain that a laundry, the business of which is to wash and iron linen, and other articles of wearing apparel and domestic use, which have become soiled in the service for which they were fabricated, is not a manufacturing establishment, within the meaning of the section quoted. In

the common understanding, the function of a laundry is to make clothes clean, rather than to make clean clothes.'

"In *Commonwealth* v. *Keystone Laundry Co.,* 52 Atl. 326, where a law of the State of Pennsylvania which exempted from taxation so much of the capital stock of a manufacturing corporation as was invested in the carrying on of manufacturing was under construction, a laundry company claimed the exemption of that act. It was held that the laundry company was not a manufacturing company, even though it manufactured soaps and dyes as incidental to its business; the court there used the following language: 'Its principal business, as properly stated by the court below, is washing and ironing, and in carrying on the business it needs soaps and dyes, and even if it does manufacture these two articles for its own use, instead of buying them, such manufacture does not make the "washing and ironing" concern a manufacturing plant and business as defined by statute, lexicon or judicial utterance.' "

In *Muir* v. *Samuel* (Ky.), 62 S. W. 481, the Kentucky Court of Appeals said:

"The validity of this claim depends upon the question as to whether the laundry is a manufacturing establishment under the statute. The only business of a laundry is to transform soiled into clean linen. It is true that this is done largely by means of machinery, and requires the use of an engine and boilers, and other appliances ordinarily used in manufacturing establishments; but, after all, nothing new is produced."

It follows, from what has been said, that we find no merit in appellant's contention that laundry and dry cleaning machinery are manufacturing or processing equipment within the meaning of the Arkansas statutes herein discussed.

Affirmed.