[Civil No. 3897.   Filed March 14, 1938.]

[77 Pac. (2d) 209.]

THAD MOORE, FRANK LUKE and D. C. O'NEIL, as Members of and Constituting the State Tax Commission of Arizona, Appellants, v. FARMERS MUTUAL MANUFACTURING AND GINNING ˙ COMPANY, a Corporation, JAMES FRANCIS and J. N. WILLIAMS, Appellees.

Mr. Joe Conway, Attorney General of Arizona, Mr. Allan K. Perry, Special Assistant Attorney General, Mr. W. E. Polley, Assistant Attorney General, and Mr. J. B. Sumter, of Counsel, for Appellants.

Messrs. Baker & Whitney, Mr. Lawrence L. Howe and Mr. Frank L. Snell, for Appellees.

LOCKWOOD, J.— Thad Moore, Frank Luke, and D. C. O'Neil, in their official capacities as members of the State Tax Commission, hereinafter called plain-

tiffs, filed an action for a declaratory judgment against Farmers Mutual Manufacturing & Ginning Company, a corporation, and James Francis and J. N. Williams, hereinafter called defendants, to determine whether those engaged in the ginning of cotton should pay a tax of one-fourth of one per cent. on their gross income, under subsection (g) of section 2, article 2, chapter 77 of the Laws of 1935, commonly known as the Privilege Sales Tax Act, or a tax of one per cent. under subsection (a), paragraph 1 of section 2, article 2, chapter 77, *supra*. It was admitted by both plaintiffs and defendants that the defendants were under the obligation of paying a tax under one or the other of the subsections above set forth, the question being which governed the business of the ginning of cotton. The parties also agree that the rule of law which is decisive of the case is that where there is in the same statute a particular enactment, and also a general one which, in its most comprehensive sense, would include the subject-matter embraced in the particular one, the particular enactment is operative, and the general one must be taken to affect only such cases within its general language as are not included in the provisions of the particular enactment. The question, however, is which of the two subsections is the general and which the particular enactment in the present law. They read as follows:

Subsection (a): "At an amount equal to one per cent of the gross proceeds of sales or gross income from the business upon every person engaged or continuing within this state in the following businesses:

"1. Manufacturing, baling, crating, boxing, barrelling, canning, bottling, sacking or preparing for sale, profit or commercial use, agricultural and horticultural products, including livestock prepared for sale, or commercial use, and any product or products, article or articles, substance or substances, commodity or

commodities not included within paragraph 1, subdivision (c) of this section.''

Subsection (g): ''At an amount equal to one-fourth of one per cent of the gross proceeds of sale or the gross income from the business upon every person engaging or continuing within this state in the following businesses:

''Compounding, packing, preserving, processing and/or selling any tangible personal property whatsoever at wholesale.''

It is most strenuously urged by plaintiffs that subsection (g) is general in its nature, in that it covers the compounding, packing, preserving, processing, and/or selling any tangible personal property whatsoever, while subsection (a) 1, being limited to agricultural and horticultural products, must necessarily be special as being included with ''any tangible personal property whatsoever'' as found in subsection (g). Defendants contend the reverse is true.

Apparently much importance is attached by the parties as to the meaning of the word ''processing'' as found in subsection (g). Plaintiffs contend that the only adjudicated case defining this word holds expressly that ''processing'' is something done in the manufacturing of cotton after it has been ginned. *Georgia Warehouse Co.* v. *Jolley,* 172 Ga. 172, 157 S. E. 276. It is urged that subsection (a) 1 imposes a tax upon the business of ''preparing for sale . . . agricultural and horticultural products,'' and since it is admitted that cotton as it comes from the field, before it is ginned, has no commercial use whatsoever, the ginning must be, within the language of the subsection, the preparing of the cotton for sale.

On the other hand, it is urged by defendants that Congress, in the Agricultural Adjustment Act (as amended, 7 United States Codes Annotated section 601 et seq.), indicated quite clearly that, in its opinion, unless words of exclusion were used, the ginning of

cotton constituted a processing thereof, and that in the case of *Chickasha Cotton Oil Co.* v. *Cotton County Gin Co.*, (10 Cir.) 40 Fed. (2d) 846, 850, 74 A. L. R. 1070, the court said:

"Cotton ginning is a manufacturing process; it involves the separation of the seed from the fiber; it is a short but important step in the manufacture of both into useful articles of commerce; it is a process which must take place before either can be marketed."

■■ The word "process" is given several definitions by Webster's New International Dictionary, the standard authority for the meaning of the words of the English language. The one which obviously applies to an operation like the ginning of cotton is as follows:

"to subject (especially raw material) to a process of manufacturing, development, preparation for the market, etc.; to convert into marketable form, as livestock by slaughtering, grain by milling, cotton by spinning, milk by pasteurizing, fruits and vegetables by sorting and repacking."

It will be seen that the essential portion of the definition is to "prepare raw material . . . for the market . . . " It is evident to us that had either subsection (a) 1 or subsection (g) been omitted from the act, the other remaining therein, cotton ginning could fairly and reasonably be said to be within the meaning of the included section, for the "manufacturing" of subsection (a) 1 is, in its broad meaning, the same as the "processing" of subsection (g). Webster's New International Dictionary.

On comparing the two sections we find in each of them two things: First, a subject which is operated upon; and, second, a description of the nature of the operation performed. Considering the nature of the operation, we find that subsection (g) describes it as being "compounding, packing, preserving, processing." These may all be summed up in the phrase

"preparing for the market." In subsection (a) 1 the operation described is "manufacturing, baling, crating, boxing, barrelling, canning, bottling, sacking or preparing for sale."' Again it is clear that all of these detailed steps may be comprised under the general term of "preparing for the market." So far as the operation is concerned, each section reasonably includes under the respective terms "processing" and "manufacturing" any form of preparing raw material for the market. They are co-equal in this respect. When, however, it comes to the subject-matter of the preparation, the situation is very different. Subsection (g) operates upon "any tangible personal property whatsoever," while subsection (a) 1 is limited to

"agricultural and horticultural products, including livestock prepared for sale, or commercial use and any product . . . not included within paragraph 1, subdivision (c) of this section."

We think it appears clearly that the subject-matter of subsection (a) 1 is much more limited in its application than that described in subsection (g), and is clearly included within "any tangible personal property whatsoever" found in subsection (g). Such being the case, and applying the rule set forth above, which the parties have agreed is applicable to a situation like the present, we are of the opinion that the ginning of cotton, since it is undoubtedly an agricultural product, falls within the provisions of subsection (a) 1, rather than within the general provisions of subsection (g) as being "any tangible personal property whatsoever."

The judgment of the superior court of Maricopa county is reversed, with instructions to render judgment in accordance with this opinion.

McALISTER, C. J., and ROSS, J., concur.