NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

9W HALO OPCO, LP, *Plaintiff/Appellant*,

*v.*

ARIZONA DEPARTMENT OF REVENUE, *Defendant/Appellee*.

No. 1 CA-TX 23-0003

FILED 11-07-2024

Appeal from the Arizona Tax Court
No. TX2020-000967
The Honorable Sara J. Agne, Judge

**AFFIRMED**

COUNSEL

Frazer Ryan Goldberg & Arnold L.L.P., Phoenix
By Douglas S. John, James Michael Cool
*Counsel for Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By Benjamin H. Updike
*Counsel for Defendant/Appellee Arizona Department of Revenue*

Dickinson Wright PLLC, Phoenix
By Bennett Evan Cooper, Dawn R. Gabel, Alexandra Crandall
*Counsel for Amicus Curiae Textile Rental Services Association of America, Inc.*

Phoenix City Attorney's Office
By Julie M. Kriegh, John C. Shafer, III
*Counsel for Defendant/Appellee City of Phoenix*

---

**MEMORANDUM DECISION**

---

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge Anni Hill Foster and Vice Chief Judge Randall M. Howe joined.

---

**F U R U Y A**, Judge:

¶1 9W Halo OPCO, LLC dba Angelica Textile Services, LP ("Angelica") appeals from the tax court's grant of summary judgment in favor of the Arizona Department of Revenue ("Department"). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 In reviewing a grant of summary judgment, we view the facts in the light most favorable to Angelica and draw all justifiable inferences in its favor. *See ADP, LLC v. Ariz. Dep't of Revenue*, 254 Ariz. 417, 421 ¶ 5 (App. 2023). Though the parties dispute Angelica's business classification under Arizona Revised Statute ("A.R.S.") § 42-5159(B)(1), they do not dispute the material facts describing the mechanisms and technical aspects of Angelica's day-to-day business.

¶3 Each week, Angelica sanitizes more than 600,000 pounds of textiles and rents them to entities in the healthcare industry. Angelica's sanitization procedure involves sorting; prewashing; four wash cycles using specialized and certified chemicals for removing microbes and spores, rinsing and finishing cycles; specialized drying; inspection; and folding. Both new and used textiles are treated to remove bacteria, oils, waxes, and other chemicals. Some used textiles "are so soiled [that] they must be discarded as refuse." In an affidavit, Angelica's general manager explained the sanitization process "changes the state or form of the textiles" because contaminants "bond or affix to the fabric," altering the composition. The majority of Angelica's internal 256-page "Operational Policies & Procedures" manual focuses on health, safety, or quality control. Every day, Angelica's engineers test the sanitization equipment.

¶4 The Food and Drug Administration, the Environmental Protection Agency, and the Occupational Safety and Health Administration regulate Angelica's business. Angelica also maintains certifications from the Healthcare Laundry Accreditation Council and the Textile Rental

Services Association. Accreditation standards require all steps of the sanitization process follow strict guidelines to ensure textiles' utility in the healthcare field.

¶5             In 2018, Angelica sought a refund from the Department and the City of Phoenix ("City") for various taxes, including use taxes under A.R.S. § 42-5159(B)(1), and Phoenix City Code §§ 14-110(a)(1) and 660(g).

¶6             Relevant here, the Department denied the refund under § 42-5159(B)(1), which exempts use tax on "[m]achinery, or equipment, used directly in manufacturing, processing, fabricating, job printing, refining or metallurgical operations" and Angelica appealed to the tax court. After the Department and the City answered, Angelica moved for summary judgment, arguing it was exempt as a processing operation under A.R.S. § 42-5159(B)(1) because, among other things, its "operations convert . . . worthless, contaminated linens into marketable form."

¶7             The Department, joined by the City, responded and cross-moved for summary judgment, arguing that Angelica is not a processing operation because it is a "laundry and linen rental operation." The Department asserted "[l]aundry businesses do not meet Arizona's definition of 'processing'" and rental businesses are not "commonly understood to be processing operations." The Department contested only the classification of Angelica's business as a whole, not Angelica's factual claims about the details of its operations. Instead, it argued Arizona's definition of "processing" involves the use of "raw materials" and must be related to manufacturing.

¶8             After consideration, the court granted the Department summary judgment. It explained that "Angelica's laundry operations may include some 'processing' of the linens as they are cleaned and disinfected," but its business as a whole "is not commonly understood to be a processing operation, but a laundry."

¶9             We have jurisdiction over Angelica's timely appeal under Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), -170(C), and -2101(A)(1).

## DISCUSSION

¶10            We review the tax court's grant of summary judgment, and its interpretation of statutes, de novo. *See San Diego Gas & Elec. Co. v. Ariz. Dep't of Revenue*, 256 Ariz. 344, 347 ¶ 9 (App. 2023). When parties do not dispute the material facts, we determine whether the court correctly

applied the substantive law to those facts. *Excell Agent Servs., L.L.C. v. Ariz. Dep't of Revenue*, 221 Ariz. 56, 57 ¶ 8 (App. 2008). We may affirm the court's ruling if it is correct for any reason apparent in the record. *Ariz. Republican Party v. Richer*, 257 Ariz. 210, 218 ¶ 17 (2024).

**¶11** Resolution of this appeal requires us to construe the applicability of a tax exemption provided by A.R.S. § 42-5159(B)(1). As relevant here, § 42-5159(B)(1) exempts use tax on "[m]achinery, or equipment, used directly in . . . processing" and directs us to interpret the operations as "commonly understood within their ordinary meaning." The exemption's purpose is "to stimulate business investment in Arizona in order to improve the state's economy and increase revenue from other taxes, such as income and property taxes." *Ariz. Dep't of Revenue v. Capitol Castings, Inc.*, 207 Ariz. 445, 448 ¶ 13 (2004).

**¶12** The Arizona Supreme Court stated in *Capitol Castings* that "[o]ur interpretation of the statute . . . should further, not frustrate, the policy of encouraging investment and spurring economic development." *Id.* But we must balance this directive against the additional charge to construe tax exemptions strictly against the taxpayer, with the presumption being against exemption. *Carter Oil Co., Inc. v. Ariz. Dep't of Revenue*, 248 Ariz. 339, 341–42 ¶ 5 (App. 2020) (citing *Tucson Transit Auth., Inc. v. Nelson*, 107 Ariz. 246, 252 (1971)); *see also Capitol Castings*, 207 Ariz. at 447 ¶ 10 (explaining exemptions conflict with policy to spread burden of taxation equally among taxpayers).

**¶13** Because the parties do not contest that the items claimed are machinery or equipment, the issue presented is whether—given our duty to strictly construe the statute and the presumption against exemption— Angelica is a "processing operation," as that term is commonly understood within its ordinary meaning. *Ariz. Dep't of Revenue v. Blue Line Distrib., Inc.*, 202 Ariz. 266, 267 ¶ 9 (App. 2002) (analyzing A.R.S. § 42-5061(B)(1), which is identical to § 42-5159(B)(1) discussing manufacturing and processing as similar operations).

**¶14** Strict construction has been defined as interpretation "according to the narrowest, most literal meaning of the words without regard for context and other permissible meanings" or "according to what the interpreter narrowly believes to have been the specific intentions or understandings of the text's authors or ratifiers, and no more." *Interpretation -strict interpretation*, Black's Law Dictionary (11th ed. 2019). Further, we avoid defining terms within a statute so broadly that their meaning "is inconsistent with its accompanying words" resulting in "giving legislative

acts 'unintended breadth.'" *In re Drummond*, 256 Ariz. 558, 564 ¶ 23 (2024) (quoting *Yates v. United States*, 574 U.S. 528, 543 (2015)).

¶15 We start with the statute's language because it is the best indicator of meaning and intent. *Glazer v. State*, 244 Ariz. 612, 614 ¶ 9 (2018). If that language is plain and unambiguous when read in context, we apply it without further analysis. *Id*. If a provision has more than one reasonable interpretation, it is ambiguous. *Ryan v. Napier*, 245 Ariz. 54, 64 ¶ 41 (2018). Ambiguity is resolved by examining secondary factors, such as subject matter, purpose, and the effects and consequences of alternate interpretations. *Id*. Here, the term "processing" is not defined in Title 42, nor is its "common meaning" clear. Since the legislature did not explain, and the Department has not enacted a rule to clarify, the common meaning of "processing," we are tasked with reviewing other means to define it.

¶16 Relying on reasoning in *Capitol Castings* and *Moore v. Farmers Mutual Manufacturing & Ginning Co.*, 51 Ariz. 378 (1938), Angelica contends Arizona courts have defined "processing" as "a series of actions or operations by which tangible personal property is prepared or converted into a marketable form." The Department also relies on *Moore,* which referred to "several definitions by Webster's New International Dictionary, the standard authority for the meaning of the words of the English language" when it determined the operative definition for "processing." *Moore*, 51 Ariz. at 382.

¶17 In *Moore*, our supreme court reviewed two tax statutes—one regarding manufacturing and the other, processing—to determine which applied to a cotton ginning business. 51 Ariz. at 380–81. After considering multiple dictionary definitions of "process" and, given the specific facts of that case, it chose "[t]he one which obviously applies to an operation like the ginning of cotton[:] . . . to subject (*especially raw material*) to a process of manufacturing, development, *preparation for market*, etc[.]; to *convert into marketable form*, as livestock by slaughtering, grain by milling, cotton by spinning, milk by pasteurizing, fruits and vegetables by sorting and repacking." *Id*. at 382 (emphasis added). But it noted that "[t]hese may all be summed up in the phrase 'preparing for the market.'" *Id*. at 382–83. Hence, the notable confusion between Angelica and the Department as to the appropriate definition.

¶18 Over 65 years later, *Capitol Castings*, which Angelica suggests supports its position, considered the definition of "machinery or equipment" as used in § 42-5159(B)(1) and whether it included "expendable materials." 207 Ariz. at 450–51 ¶¶ 22–24. Angelica relies on this decision to

support its assertion that the truncated definition of process (to convert into marketable form) is the definition we should use and is consistent with the purpose of stimulating business investment in Arizona. Similarly, Angelica uses *Capitol Castings* to encourage us to use the industry definition of "processing."

**¶19**        Notably though, between *Moore* and *Capitol Castings*, the Board of Tax Appeals decided *G.B. Inv. Co. v. Ariz. Dept. of Revenue*, No. 629-88-S (Ariz. Bd. of Tax App. June 20, 1989), which considered whether a bakery business fit within the definition of "processing operation." Though not binding, this 1989 Board of Tax Appeals decision provides a useful discussion related closely to the issue at hand. In it, the Board rejected the Department's definition of "processing" as overly restrictive because, in the example of a bakery, it would include the entire process from sowing wheat to baking the bread for the exemption to apply. *Id.* But the Board also rejected *G.B. Investment Co.'s* definition as being overbroad because it would include cooking hamburgers to be "processing." *Id.* The Board ultimately concluded that "processing" was "an integrated series of operations which placed tangible personal property in a form, composition, or character different from that in which it was acquired and transformed it into a different product for a distinctive name, character, or use." *Id.*

**¶20**        That same year, the legislature enacted the precursor to the current § 42-5159, which provided an exemption for "[t]angible personal property which directly enters into and becomes an ingredient or component part of any manufactured, fabricated or processed article, substance or commodity for sale in the regular course of business." *See* 1988 Ariz. Legis. Serv. 312, sec. 18. Just a year later, the statute was again amended, resulting in the expanded exemption language that is presently in question. *See* 1989 Ariz. Legis. Serv. 132, sec. 35. This is why the term "processing" in today's statute "refer[s] to and include[s] those operations commonly understood within their ordinary meaning" in *1989.* We presume that the legislature is aware of the state of the law when it adopts or amends a statute. *Washburn v. Pima Cnty.*, 206 Ariz. 571, 576 ¶ 11 (App. 2003).

**¶21**        Here, Angelica's proposed definition may nominally align with the 1988 version of the statute, but it is overbroad and truncated. Its definition would encompass any business that improved marketability of a commodity, including a restaurant, since that process unquestionably prepares and converts ingredients into a more marketable form—a premise our court has plainly rejected. *See Blue Line Distrib.*, 202 Ariz. at 267 ¶ 9.

¶22     And much like the Department's position in *G.B. Investment Co.*, Amicus Textile Rental Services Association of America, Inc. echoes here Angelica's request to accept the industry's understanding of "processing." This we cannot do because § 42-5159(B)(1) expressly requires that we interpret "processing operation" according to how these words are "commonly understood within their ordinary meaning." This directive specifically precludes use of specialized, industry-specific understandings of the statute's terms, particularly given our duty to strictly construe them. *See Meredith Corp. v. State Tax Comm'n*, 23 Ariz. App. 152, 153 (1975) (observing that the statutory directive of § 42-5159(B)(1) "requires an application of the statute which is consistent with the ordinary man's understanding of what constitutes a 'processing operation,' rather than a scientific or technical interpretation.") (internal citation omitted). And since the statute's present language was adopted in 1989, we look to definitions that were then in place.[1]

¶23     Thus, for purposes of interpreting the commonly understood meaning of "processing" in the context of qualifying for the exemption specified in § 42-5159(B)(1), we reaffirm the definition presented in *Moore*, which states: "to subject (especially raw material) to a process of manufacturing, development, preparation for market, etc.; to convert into marketable form, as livestock by slaughtering, grain by milling, cotton by spinning, milk by pasteurizing, fruits and vegetables by sorting and repacking." *Moore,* 51 Ariz. at 382. Given this definition of "processing," we turn to application to Angelica's business.

¶24     Angelica highlights the portion of the *Moore* definition discussing "preparation for the market." It contends that because it "transforms contaminated, unmarketable healthcare textiles . . . into clean, disinfected, and marketable textiles," this makes Angelica a processing operation as covered by § 42-5159(B)(1). It also points to its contract with the Southern Arizona Veteran's Affairs Health Care System ("VA") to support that it qualifies as a processing operation. That contract uses the terms "laundry" and "processing," and imposes several requirements, including that Angelica be accredited "in providing healthcare laundry/linen services." The VA requires Angelica's employees have specific training in safety and quality control topics including: "basic bacteriological concepts," "infection control," bloodborne pathogens,

---

[1]     We note that the legislature has amended § 42-5159(B) many times since 1989 and has provided exemptions for specific industries. For this reason, if the legislature intended to exempt Angelica's industry, it knows how to do so.

employees' "impact on patient care," and exposure to hazardous working conditions. The VA contract also stipulates pick-up and delivery and inventory policies for VA-owned items. But while these requirements for the contract may be construed to describe processes in a broad sense, the contract makes clear that Angelica is providing a service, not a product. Meanwhile, the definition from *Moore* contemplates a product that is converted to a marketable form, not a service.

¶25 For its part, the Department highlights the language in *Moore* citing "especially raw material" and contends processing must change something into a "manufactured or developed form." And the Department argues that even if processing does not require raw materials or a new product, Angelica does not transform textiles, it "only clean[s] them." But this argument is inconsistent with an example provided in *Moore's* definition—namely that pasteurization of milk is considered processing. *Moore*, 51 Ariz. at 382. Use of pasteurization of milk as an example of "processing" demonstrates that "preparation for market" could include a process where materials are sanitized to increase marketability. Thus, the Department's argument regarding how particular processing occurs is not determinative under *Moore*. *Id.*

¶26 More persuasive, the Department notes that "Angelica's laundry activity is only a portion of the overall rental business, which includes pickup and delivery, [another service] which is common to a rental operation and which is not typical of a processing operation." The Department essentially argues that Angelica sanitizes textiles only to rent them, such that renting textiles is its primary purpose. Comparing Angelica to a car-rental service, the Department argues Angelica's sanitizing process is a typical "post-rental cleaning and servicing activity" common to rental businesses and does not define its principal nature.

¶27 Angelica rejoins that its "principal business is processing textiles in an industrial setting" and that whether it "elects to sell its sanitary linens and repurchase them once soiled as opposed to leasing those textiles" is irrelevant to its principal nature. We disagree.

¶28 Of the multiple examples cited in *Moore*'s definition of "processing," none suggest that "preparation for market" would result in the product being returned to the processor to be processed again. Instead, the examples used all suggest a product that will be put into the marketplace for purchase and potentially used to make other products. *See Unitog Rental Servs., Inc. v. Dir. of Revenue*, 779 S.W.2d 568, 570 (Mo. 1989) ("the processing . . . produced a new and different product"). Here,

Angelica sanitizes its own property that is eventually returned to be sanitized again. While it is undisputed that Angelica performs mechanically and chemically intense, high-volume, industrial-scale sanitization, it is also undisputed that Angelica owns, rents, delivers, and collects the textiles that it sanitizes. In so doing, Angelica concedes that it is not introducing new products to the market, but instead is restoring the original article for repeated use. *Moore*'s definition does not contemplate such a business as "processing."

¶29     Other jurisdictions have concluded the same. *See Unitog Rental Servs., Inc.*, 779 S.W.2d at 570 (concluding that laundering is merely the "repair and restoration of the original article"); *Pellerin Laundry Mach. Sales Co. v. Cheney*, 237 Ark. 59, 65 (1963) (stating "the function of a laundry is to make clothes clean, rather than to make clean clothes."). And though Angelica differs from the laundries in these out-of-state cases in the type of textiles, customers, facility, industrial nature, regulatory environment, expertise, processes used, and resulting standard of cleanliness, the determinative predicate is the same—Angelica is a laundry, which is a service that has never been included in the common understanding of a "processing operation."

¶30     Finally, Angelica argues we must consider the purpose of the exemption (to "promote investment in large scale industrial manufacturing and processing") in determining whether it qualifies for the exemption. While the operations listed in § 42-5159(B)(1)—"manufacturing, processing, fabricating, job printing, refining or metallurgical operations"—can reasonably be read as sharing an industrial nature, and our supreme court has, in *dicta*, referred to the operations listed in § 42-5159(B)(1) as "industrial processes" in *Capitol Castings*, 207 Ariz. at 448 ¶ 14, nothing in the statute itself provides that a qualifying exempt operation will be "large scale" or "industrial." Although we must be mindful of the purpose of § 42-5159(B)(1), as emphasized in *Capitol Castings*, we must first rely on the language the legislature elected to include in the statute. *See First Nat. Bank of Arizona v. Superior Ct. of Maricopa Cnty.*, 112 Ariz. 292, 295 (1975) ("If this court were to insert in the statute . . . qualifying provisions, it would in no sense be interpreting the statute as written, but would be rewriting the statute in accord with the presumed legislative intent. That is a legislative and not a judicial, function." (quoting *Blair v. Pitches*, 486 P.2d 1242, 1259 (Cal. 1971)).

¶31     Because Angelica's business does not meet the definition of a processing operation—and in view of the controlling presumption against exemption, *Carter Oil Co., Inc.*, 248 Ariz. at 341–42 ¶ 5—we hold Angelica is

not a processing operation entitled to a use-tax exemption under A.R.S. § 42-5159(B)(1). If the Arizona Legislature wishes to exempt businesses like Angelica, it may do so expressly in statute. Until then, we are bound by the commonly understood definition of processing and the presumption.

## CONCLUSION

**¶32**        We affirm.

**¶33**        Angelica requests attorneys' fees on appeal under A.R.S. § 12-348(B). Because Angelica is not the prevailing party, we decline to award it attorneys' fees. *See* A.R.S. § 12-348(B).



AMY M. WOOD • Clerk of the Court
FILED:    AGFV